## ALPHINE HODGE v. LEANA WETZLER.

Argued February 19, 1903—Decided June 8, 1903.

1. A married woman could not, at the common law, maintain an action for enticing away the husband and for the alienation of his affections.
2. Nor is such a right of action conferred upon a married woman in this state, under the Married Women's act (*Gen. Stat., p.* 2012), or under the twenty-fourth section of the Practice act. *Gen. Stat., p.* 2536.
3. The demurrer to a declaration setting forth such a cause of action in this case was sustained.

On demurrer to declaration in tort.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, HENDRICKSON and PITNEY.

For the plaintiff, *Warren Dixon.*

For the defendant, *Corbin & Corbin.*

The opinion of the court was delivered by

HENDRICKSON, J. This action is brought by the plaintiff, a married woman, against the female defendant, to recover damages for the alleged alienation of the husband's affections and the resulting loss of his society, comfort, aid, assistance and support.

There are two counts to the declaration, each setting forth, substantially, the same cause of action, the only difference being that, in the first count, there is added to the averment of enticing away the husband, &c., the more aggravated charge of criminal conversation. The gist of the action is the same in either case, and that is the loss of *consortium,* or the society and comfort of the husband. There is a demurrer to each of the counts. The causes of demurrer are—*first,* that no such action at law can be brought by the wife, and *second,* that the husband is not joined in the action as co-plaintiff.

This right of action has been known to exist at the common law in favor of a husband against a seducer of his wife's affections since the decision in *Winsmore* v. *Greenbank, Willes* 577, in the year 1747. But no case appears in the long line of English decisions where the wife has brought a corresponding action for a similar invasion of her marital rights. This is not surprising when we reflect upon the disabilities which attached to the wife, as a result of coverture, under the common law. For, in order to obtain redress for torts to her person or reputation, it was necessary for the husband to join in the action, and the damages, when recovered, if collected in his lifetime, belonged to the husband. To have entertained an action of the character we are now considering in favor of the wife it would have become necessary to join the husband, and thus enable the wrongdoer to realize a profit from his own wrongdoing. We find no allusion to the existence of such a right of action in favor of the wife in the decisions and treatises upon the common law until the appearance of a *dictum* of Lord Campbell in the case of *Lynch* v. *Knight,* 9 *H. L. Cas.* 577, which was decided in 1861. The action was for slanderous words affecting the character of the wife, whereby it was alleged that she had lost the affection and society of her husband.

It must be observed that in this case the husband joined the wife in bringing the action "for conformity," as there was no enabling act authorizing her to sue. Lord Campbell said: "If it can be shown there is presented to us a concurrence of loss and injury from the act complained of, we are bound to say this action lies. Nor can I allow that the loss of *consortium* or conjugal society can give a cause of action to the husband alone." In a subsequent portion of his decision he says that the better opinion is that a wife could not maintain or join in an action for criminal conversation against the paramour of her husband who had seduced him. Lord Cranworth was strongly inclined to think that the view expressed by Lord Campbell was correct, but did not feel called upon to express a decided opinion, as it was agreed that the judgment of the court should be put upon another ground.

Lords Brougham and Wensleydale expressed the view that the action would not lie. In the American cases there has been developed a divergence of views as to whether the married woman had the right of action at common law for the alienation of her husband's affections. This right is denied in the following, among other, cases: *Lellis* v. *Lambert,* 24 *Ont. App.* 653; *Morgan* v. *Martin,* 92 *Me.* 190; *Doe* v. *Roe,* 82 *Id.* 503; *Crocker* v. *Crocker,* 98 *Fed. Rep.* 702; *Duffies* v. *Duffies,* 76 *Wis.* 374; *Mehrhoff* v. *Mehrhoff,* 26 *Fed. Rep.* 13; *Clow* v. *Chapman,* 125 *Mo.* 101. Among the cases where this right is held to have existed are the following: *Foot* v. *Card,* 58 *Conn.* 1; *Haynes* v. *Nowlin,* 129 *Ind.* 581; *Postlewaite* v. *Postlewaite,* 1 *Ind. App.* 473; *Smith* v. *Smith,* 98 *Tenn.* 101; *Bassett* v. *Bassett,* 20 *Ill. App.* 543; *Bennett* v. *Bennett,* 116 *N. Y.* 584. In the majority of these cases and in a large number of others, noted in 15 *Am. & Eng. Encycl. L.* (2d ed.) 865, *notes* 3, 4, it has been held that, by reason of the disability of coverture, the right of action remained in abeyance, and could not be prosecuted by the *feme covert* in her own name. But it has been generally held in these cases that, where the ban of coverture has been removed by enabling statutes, giving her the right to sue as a *feme sole,* she may maintain this action.

This case is one of first impression in this state, for although *McKenna* v. *Algeo,* 51 *Atl. Rep.* 936 (February, 1902), was a similar action, the case was heard upon a motion for a new trial, and the opinion shows that the right to bring the action was not considered by the court. The new trial was granted upon another ground. We are entirely satisfied, both upon principle and authority, that, whatever may be the true theory of the wife's right of action in the abstract at common law, no remedy then existed whereby such right of action could be maintained. We do not deem it necessary in this case to discuss the question of abstract right just alluded to, for the reason that, conceding its existence, we fail to find a statute of this state empowering a married woman to sue as a *feme sole* in actions of this character. I may say that it was conceded on the part of the demurrant that the right of the wife

to maintain this action at common law was at least debatable, but it was contended that such right arises under section 11 of an act entitled "An act to amend the law relating to the property of married women" (*Gen. Stat., p.* 2012), and under section 24 of the Practice act. *Gen. Stat., p.* 2536.

It is contended that the *consortium* may be regarded as property, and that therefore the former act will apply. The section provides "that a married woman may maintain an action in her own name and without joining her husband therein for all breaches of contract, and for the recovery of all debts, wages, earnings, moneys and all property, both real and personal, which by this act is declared to be her separate property, and for all damages done thereto, and she shall have in her own name the same remedies for the recovery and protection of such property as if she were an unmarried woman; and in any civil or criminal proceedings it shall be sufficient to allege such property to be her property." Under that act sections 1, 2, 3 and 4 define what is meant by separate property, to wit, real and personal property, and the rents, issues and profits thereof, which she receives or obtains "by purchase, gift, grant, devise, descent, bequest or in any manner whatever;" also her wages and earnings and the investment thereof. In the interpretation of statutes like this, though they may be regarded as remedial in character, being in derogation of the common law, they must be construed strictly. *Alpaugh* v. *Wilson,* 7 *Dick. Ch. Rep.* 424; 23 *Am. & Eng. Encycl. L.* 386, 389. We must also have regard to the fact that, notwithstanding this and other statutes have been passed removing, in many respects, the disabilities of a *feme covert,* it is held by our courts "that the rule of the common law that the husband and wife are to be regarded as one person has not been abrogated in this state." *Alpaugh* v. *Wilson, supra; affirmed,* 7 *Dick. Ch. Rep.* 589. The property intended by this act is so earmarked by the words "real and personal property," "separate property," "the rents, issues and profits thereof," as to leave no doubt but that the words "real and personal property" are used in their ordinary, natural meaning, as indicating property that has a present

money value and from which income and profits ordinarily arise. It would be giving the words an exceedingly broad and unusual meaning, under the circumstances, to have them embrace within their meaning the *consortium*, which, at most, is only a marital right growing out of the marriage relation. It was held by the Court of Errors, in *Pennsylvania Railroad Co.* v. *Goodenough*, 26 *Vroom* 577, 588, and the language of the above section is inapplicable to a right to sue for a tort, on the ground that no rent, issue or profit, in the sense of the statute, can arise out of a tort. It seems clear that the section in question fails to confer the right to bring this action. We turn to the twenty-fourth section of the Practice act, which provides that any married woman, "living separate from her husband," may bring suit in her own name for the recovery of damages for any injury done to her person or reputation. The injury complained of does not purport to be one to plaintiff's reputation. Is it an "injury to her person" within the meaning of the statute? The cause of action complained of is the alleged violation of conjugal rights. Clearly it is not an injury to the person in the strict sense of the term, but to the relative rights of the individual. If it be contended that the words "injury to the person" is equivalent to the expression "injury to personal rights," then why does the statute use the words "damage to the person or reputation?" For under such a construction the words "injury to the person" must include injury to reputation as well as to all other personal rights, and the use of the word "reputation" in the statute would be superfluous. And applying that rule of construction which gives effect to every word of a statute when possible, it follows that the words "injury to the person" are not the equivalent of the words "injury to personal rights." Similar views are expressed in *Wagner* v. *Lathers*, 26 *Wis.* 436, and in *Lellis* v. *Lambert, supra.*

We think it is apparent that this statute was not designed to create new causes of action, but to give to the wife, when living separate, the right to sue alone in the same actions in which, prior to the act, it was necessary that the husband should join. The result would seem to follow that, if the

wife had no action at common law for the alienation of her husband's affection, she cannot derive such a right from the statute in question. In some jurisdictions the denial of this right of action to the wife has been characterized by the judges as an unjust discrimination against her. In other jurisdictions this class of actions has been regarded as of doubtful expediency. But we think these and similar considerations are for the legislature, rather than the courts, and that it is our duty, if possible, to declare the law as it is, and not as we may think it should be. For the reasons stated we think the present action cannot be sustained. Therefore the other grounds of the demurrer need not be considered. The demurrer is sustained, with costs.