## CIRCUIT COURT OF THE CITY OF RICHMOND

Cynthia P. Santowasso
and Anthony G. Santowasso

v.

Peter A. Zedler et al.

January 29, 1998

Case Nos. LB-2316-1 and LB-2317-1

BY JUDGE MELVIN R. HUGHES, JR.

In this case the parents of twins born conjoined seek money damages on claims of negligence and negligent infliction of emotional distress. The defendants are several medical doctors and their professional corporations. These are two cases filed separately by the parents claiming damages as to each child. Before the court are the defendants' pleas of the statute of limitations, demurrers, and motions to dismiss. For purposes of ruling on these matters, the court will accept as true all properly pleaded material facts as well as "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged . . . ." *Fox v. Curtis*, 236 Va. 69, 71 (1988). However, in considering the facts on demurrer, the court is not bound by the pleaders' conclusions of law. *Id.*

### I. *Summary of Factual and Legal Contentions*

The plaintiffs are Cynthia P. Santowasso and Anthony G. Santowasso, parents of the minor twins Aaron and Zachary Santowasso. The defendants

are Peter A. Zedler, M.D., R. Stephen Eads, M.D., Richard F. Rinehardt, M.D., and their respective professional corporations.

Mrs. Santowasso began seeing Dr. Zedler in 1990 for routine gynecological care and treatment. On March 10, 1994, Mrs. Santowasso visited Dr. Zedler's office with the knowledge that she was pregnant. Thereafter, Dr. Zedler, after examination and administering a vaginal probe ultrasound, determined that Mrs. Santowasso was 4.5 weeks pregnant. Dr. Zedler personally examined Mrs. Santowasso on approximately a dozen occasions between March and September 1994. She was also examined on March 15, 1994, by Dr. Rinehardt, an associate of Dr. Zedler. In addition, Mrs. Santowasso telephoned Dr. Zedler on at least three occasions. Her concerns (as communicated in person and over the telephone) included vaginal bleeding and discharge, hives, tightening and irritability of the uterus.

Dr. Zedler discovered the twin gestation during an ultrasound test on April 13, 1994. Mrs. Santowasso was admitted to Henrico Doctor's Hospital on September 14, 1994, with the onset of labor. Dr. Eads was the attending physician. The twins, Aaron and Zachary, were born at 5 a.m. on September 15, 1994. Upon delivery, it was discovered that the boys were conjoined by virtue of sharing the same colon. Since their birth, the twins have undergone multiple surgeries to correct the conjoined bowel and have been otherwise treated for related ailments.

As noted, a separate motion for judgment has been filed on behalf of each of the twins. Absent different references to the individual twins, the paragraphs and allegations in the pleadings are identical. Count I alleges that the defendants were jointly and severally negligent in their monitoring, caring for, treating, diagnosing, evaluating, and advising their patient. The plaintiffs contend that the defendants failed to provide an appropriate, timely, and accurate diagnosis of conjoined twins prior to birth. In particular, the plaintiffs allege that the defendants failed to recognize the significance of repeated episodes of vaginal spotting, failed to refer or recommend high-resolution ultrasound testing for decreased fetal movements, failed to appreciate the significance of decreased fetal movements in ultrasound studies, and failed to refer the plaintiffs to appropriate specialists.

The plaintiffs argue that the defendants' failure to diagnose the twins' condition deprived the parents of the opportunity to make an informed decision regarding the birth, continuation, or termination of Mrs. Santowasso's pregnancy. But for the defendants' negligence, the plaintiffs would have elected to terminate the pregnancy through a therapeutic abortion.

Count II alleges that the defendants' actions were a direct and proximate cause of negligent infliction of emotional distress.

Plaintiffs seek damages for emotional injury, inconvenience, discomfort, mental anguish, life changes, lost income, lost wages, deprivation of full society and services of their sons, and medical expenses that have been and will be incurred for the care of their sons.

## II. *Discussion*

### A. *Pleas of the Statute of Limitations*

The defendants contend on demurrer that a cause of action for wrongful birth accrues when the mother's right to terminate the pregnancy ends. Abortion or termination of a pregnancy is unlawful after the second trimester of pregnancy unless "continuation of the pregnancy is likely to result in the death of the woman or substantially and irremediably impair the medical or physical health of the woman." Va. Code § 18.2-74. The plaintiffs' Motion for Judgment contains no allegations that Mrs. Santowasso's life was endangered or health threatened at the conclusion of the second trimester. The defendants argue that the cause of action accrued when Mrs. Santowasso was no longer able to legally terminate her pregnancy. As the beginning of the third trimester was August 20, 1994, and the Motion for Judgment was not filed until September 12, 1996, the claim would be barred by the two-year limitations period for personal injuries contained in Va. Code § 8.01-243(A).

A cause of action for personal injury accrues on the date of the injury. Va. Code § 8.01-230. Negligent infliction of emotion distress based on a "wrongful birth" was recognized in *Naccash v. Burger*, 223 Va. 406 (1982) (action for wrongful birth of child afflicted with Tay-Sachs disease). There, the Court said that the injury occurred when the doctors delivered the erroneous, prenatal medical diagnosis to the parents. *Id.* at 414. However, the Court has not *directly* decided the statute of limitations question in the wrongful birth context. The defendant cites analogous medical malpractice cases on "failure to diagnose" for the proposition that the date of injury is the date on which the problem develops into "a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *George v. Pariser*, 253 Va. 329 (1997) (citing *DeBoer v. Brown*, 673 P.2d 912, 914 (Ariz. 1983)) (injury occurred when cancerous melanoma changed from benign to malignant status, allowing the cancer to metastasize and recur). The "more serious injury," as envisioned by the

defendant, is Mrs. Santowasso's inability to legally abort her pregnancy, even if she had been informed that the twins were conjoined.

The court declines to adopt the *Pariser* date of injury test to the circumstances of the instant case. "The statutory word 'injury' means *positive, physical or mental hurt* to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded . . . ." *Locke v. Johns-Manville Corp.*, 221 Va. 951, 958 (1981) (emphasis added). *See also Nunnally v. Artis*, 254 Va. 247, 251 (1997). No positive, physical or mental hurt could have accrued at the time that the defendants' allegedly negligent treatment deprived the plaintiffs of their opportunity to terminate the pregnancy, *e.g.*, the end of the second trimester. The court finds that the cause of action accrued, and the damage developed, on the date that the plaintiffs became aware of their children's disorders, the birth date of the defective child, September 15, 1994. "Before the birth of a child, the plaintiffs had only a *potential* claim because the loss of the opportunity to abort is of no consequence unless the pregnancy results in a live birth . . . . [T]he cause of action is for the *birth of a defective child* in contravention of the parents' right to abort as a result of the defendants' alleged negligence; it is not the mere tortious deprivation of the right to abort, without more." *Barnes v. Head*, 30 Va. Cir. 218 (Fairfax Co. 1993) (emphasis added). The extent of the children's defects was not revealed despite repeated sonograms by the defendants; it only became apparent once the twins were born conjoined and required extensive medical care. As the Motion for Judgment was filed on September 12, 1996, this is within the two year statute of limitations. The defendants' plea is rejected on the basis of *Barnes*.

## B. *Damages for Negligent Infliction of Emotional Distress*

As a derivative of the plea of the statute of limitations, the defendant also alleges that the plaintiffs are not entitled to damages for emotional distress. Generally, damages for emotional distress are not allowable unless they result directly from tortiously caused physical injury. *Naccash*, 223 Va. at 416 (citation omitted). However, an exception will be allowed if the evidence shows an unbroken causal chain directly linking the erroneous diagnosis, the deprivation of the parental opportunity to accept or reject the continuance of the mother's pregnancy, and the emotional distress the parents suffered following the birth of the fatally defective child. *See id.*; *see also Hughes v. Moore*, 214 Va. 27, 34 (1973); *Dwyer v. Scurlock*, 23 Va. Cir. 326 (Fairfax Co. 1991) ("*Naccash* evinces a willingness on the part of the Court to compensate a party for missing a 'window of opportunity' to

prevent injury as a result of the negligence of health care professionals"). The defendant argues that the plaintiffs' claims for emotional distress are not cognizable in the absence of an independent claim for wrongful birth. As the wrongful birth claim survives the plea of the statute of limitations, the claim for negligent infliction of emotional distress will be allowed as well. In accordance with *Hughes*, the plaintiffs will be required to demonstrate at trial, by clear and convincing evidence, an unbroken chain of causation between the negligent act, the emotional disturbance, and the injury of lost opportunity.

## C. *Demurrers*

On demurrer, the defendants contend that the facts as alleged in the Motions for Judgment fail to state viable causes of action against Dr. Rinehardt and Dr. Eads. A transvaginal ultrasound examination performed on March 15, 1994, is the only alleged care provided by Dr. Rinehardt to Mrs. Santowasso during her pregnancy. This examination was conducted two weeks *before* Dr. Zedler discovered the twin gestations. Other than serving as the attending physician at the birth of the twins, the plaintiffs have failed to allege that Dr. Eads treated Mrs. Santowasso at any other time during her pregnancy. The gravamen of the plaintiffs' claim is that the defendants' failure to diagnose the conjoined twins deprived them of the opportunity to terminate the pregnancy. Based upon the factual pleadings, the timing of Dr. Rinehardt's treatment made it impossible for him to diagnose the twin gestation, let alone any abnormalities. Further, while Dr. Eads administered drugs in an attempt to avoid premature labor and later delivered the twins by cesarean section, his actions could not have been responsible for the failure to diagnose a congenital defect. His presence at the date of injury, September 15, 1994, does not cure the absence of any causal link between his actions and the allegedly negligent course of prenatal care. The only appropriate action available to Dr. Eads was to deliver the twins. Even if he had discovered the abnormality at the time Mrs. Santowasso was admitted on September 14, he was prohibited by Virginia law from performing a third trimester abortion. A common injury caused by the concurrence of respective negligent acts establishes the joint liability of tortfeasors. *Whitehurst v. Charles Town Hosp.*, 626 F.2d 357, 359 (4th Cir. 1980) (citation omitted). The plaintiffs have failed to plead the commission of any negligent acts by Dr. Rinehardt and Dr. Eads which may have contributed to the Santowassos' injury. The demurrer is sustained and these individual defendants are dismissed from this action.

The defendants also contend that the plaintiffs may not recover for the loss of full society and services of their sons. This element of damages may be recovered in the case of an injury to an unemancipated infant by wrongful act. *Moses v. Akers*, 203 Va. 130, 132 (1961) (citation omitted). In the instant case, the pleadings do not allege that the twins were injured by the actions of the defendants. Rather, the injury was a congenital birth defect not discovered until delivery. Absent a physical injury stemming from the allegedly tortious conduct, a plaintiff cannot recover for the loss of full society and services unless such damages have been expressly provided by the General Assembly. *See, e.g.,* Va. Code § 8.01-52. "Under traditional tort principles . . . recoverable damages are those which are the *reasonable and proximate consequences* of the breach of duty" owed by the physician to the patient. *Miller v. Johnson*, 231 Va. 177, 183 (1986) (citations omitted) (emphasis added). For example, medical care, pain and suffering, lost wages for a reasonable period, emotional distress, extraordinary care and treatment of the fatally defective child may be compensable if they are causally-related to the tortiously caused physical injury. *Id.* at 182-183. The demurrer is sustained; the plaintiffs may not recover for the loss of full society and services of their children.

The defendants also argue that the plaintiffs may not recover for their *own* inconvenience, discomfort, or mental anguish stemming from the alleged negligence. Such damages are necessarily a part of the physical injury to the plaintiff and are inseparable therefrom. *Norfolk & W. R. Co. v. Marpole*, 97 Va. 594, 600 (1899); *Connelly v. Western Union Tel. Co.*, 100 Va. 51, 54 (1902). The plaintiffs have not pleaded that any physical injuries were inflicted on Mrs. Santowasso by virtue of the defendants' actions. As such, the demurrer is sustained; the plaintiffs may not recover for their *own* inconvenience, discomfort, or mental anguish.

Finally, the defendants argue on demurrer that no recovery may be had for medical expenses and negligent infliction of emotional distress. The latter point has been addressed above in section (B). As for the plaintiffs' right to recover medical expenses incurred in caring for their children, this element of compensation is derivative of the child's claim. *Bulala v. Boyd*, 239 Va. 218, 231 (1990). The facts underlying the *Naccash* cause of action for wrongful birth are sufficiently analogous to the instant case to survive demurrer. The cases offered by the defendant as limiting the scope of *Naccash* are inapposite to the instant action. *See Dwyer v. Scurlock*, 23 Va. Cir. 326 (Fairfax Co. 1991). Both sets of parents were denied the opportunity to prevent a wrongful birth due to the defendants' diagnosis. In *Naccash*, the diagnosis regarding Tay-Sachs disease was erroneous. Here, the diagnosis

of conjoined bowels never occurred. The result was the same, extensive medical expenses incurred in caring for an ill child. The *Naccash* child was fatally defective; the Santowasso twins have needed, and will continue to require, medical treatment to remedy their conjoined bowel and treat related ailments. The underlying claim is valid, and the demurrer to the recovery of medical expenses is overruled.

## D. *Motions to Dismiss*

The defendants seek to have the Virginia Women's Center dismissed from this action. They have attached to their Motion to Dismiss a Certificate of Incorporation issued by the State Corporation Commission; the Virginia Women's Center was incorporated on November 8, 1995. The court found that the cause of action accrued on September 15, 1994. Although the Virginia Women's Center was not in existence at the time of the alleged injury, the court finds that it is premature to grant the requested dismissal. Discovery is necessary to establish whether any prior malpractice liabilities incurred by the physician members or employees of any predecessor corporation have been transferred to this new corporation. The motion is overruled.

## III. *Conclusion*

In conclusion, the pleas of the statute of limitations are denied; the demurrers are sustained in part and overruled in part; and the motions to dismiss are overruled. The plaintiffs are granted leave to amend their pleadings. Any amended pleadings must be filed within ten days of the date of this letter. The defendants may respond within ten days after service on counsel of any amended pleading.